O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LORI ANN BARRY, ) | Case No. EDCV 11-01657-MLG |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Lori Ann Barry seeks judicial review of the Commissioner's denial of her application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). For the reasons stated below, the decision of the Commissioner is affirmed and the action is dismissed with prejudice.

**I. BACKGROUND**

Plaintiff was born on February 18, 1968. (AR at 70). She has relevant work experience as a merchandise and sales attendant. (AR at 17). Plaintiff filed her applications for benefits on December 16, 2008, alleging disability beginning December 15, 2008, due to psychological impairments. (AR at 10, 164). The Social Security

1

Administration denied Plaintiff's applications initially and upon reconsideration. (AR at 10).

A hearing was held before Administrative Law Judge ("ALJ") Sharilyn Hopson on July 20, 2010. (AR at 10). Plaintiff, who was represented by counsel, testified at the hearing, as did a vocational expert ("VE"). The ALJ issued a decision on September 13, 2010, denying Plaintiff's application. (AR at 10-18). The ALJ found that Plaintiff suffers from the following severe impairments: morbid obesity, major depressive disorder, anxiety, type 2 diabetes mellitus, adult attention deficit disorder ("ADD"), irritable bowel syndrome, and migraines. (AR at 13). Nevertheless, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work and is capable of performing her past relevant work. (AR at 17-18). The Appeals Council denied Plaintiff's request for review (AR at 1).

Plaintiff commenced this action for judicial review on November 1, 2011. On May 2, 2012, the parties filed a joint statement of disputed issues ("Joint Stip."). Plaintiff contends that the ALJ erred in several respects. First, the ALJ failed to properly consider the relevant medical evidence, including the opinions of Melissa Darnell, a marriage and family therapist, and Bipin Patel, M.D., her treating psychiatrist, while improperly giving significant weight to the opinion of state examining physician Linda M. Smith, M.D. (Joint Stip. at 4-8). Second, the ALJ improperly assessed her credibility in considering her subjective complaints. (Joint Stip. at 12-14). Finally, the ALJ failed to properly consider the third party statements of claimant's friend, Juanita Medina. (Joint Stip. at 17-19).

Plaintiff seeks reversal and an award of benefits, or alternatively, remand for further administrative proceedings. (Joint Stip. at 21). Defendant requests that the ALJ's decision be affirmed, or, if the Court finds that the ALJ committed reversible error, that the Court remand for further administrative proceedings. (Joint Stip. at 22).

**II.  STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

//

III. <u>Analysis</u>

   **A. The ALJ Appropriately Considered the Relevant Medical Evidence**

      **1. The Opinion of Therapist Melissa Darnell**

The record contains a brief letter from Plaintiff's therapist, Melissa Darnell, stating that she had been seeing Plaintiff on a biweekly basis for approximately five months. (AR at 331). The letter explains that Plaintiff suffers from irritable bowel syndrome, high blood pressure, diabetes, bipolar depression, anxiety disorder, and ADD. The letter further states that these mental health issues and medical conditions "interfere[] with [Plaintiff's] ability to obtain and then maintain full-time employment." (AR at 331). The record also contains several pages of notes from Ms. Darnell, which discuss treatment and the diagnosis that Plaintiff suffers from depression. (AR at 388-89, 395-96).

In her decision, the ALJ noted that she had considered the correspondence from Ms. Darnell, but that because it was not from an acceptable medical source, she did not have to give it the same consideration as she would to a qualifying medical source opinion. (AR at 17). As to Darnell's comments about Plaintiff's ability to maintain full-time employment, the ALJ further explained that "such disability statements are reserved to the Commissioner." (AR at 17).

The parties dispute whether the ALJ was required to provide appropriate reasons for rejecting the opinions of Ms. Darnell.

4

(Joint Stip. at 4-6, 9-10).[1] However, the ALJ did not reject Ms. Darnell's medical diagnoses. Rather, the ALJ's found that Plaintiff does suffer from each of the severe impairments listed in Ms. Darnell's letter.[2] (AR at 12, 331). Moreover, there do not appear to be any inconsistencies between the ALJ's RFC determination and Ms. Darnell's treatment notes.(AR at 13, 388-89, 395-96)

While the ALJ did reject Ms. Darnell's opinion that Plaintiff's conditions interfere with her ability to obtain and maintain full-time employment, she provided an entirely appropriate reason for doing so. The ultimate determination of disability (i.e. whether a claimant can perform work in the national economy) rests solely with the Commissioner, and the statement of a medical source that a claimant is "unable to work" is not entitled to special weight. 20 C.F.R. 416.927(d)(1); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001) (ALJ not bound by opinion of treating physician with respect to ultimate determination of disability); *Martinez v. Astrue*, 261 Fed.Appx 33, 35 (9th Cir. 2007) ("[T]he opinion that [the claimant] is unable to work is not a medical opinion ... [and] is therefore not accorded the weight of a medical

---

[1] In *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), the Court noted that the opinions of "other medical sources" as defined by 20 C.F.R. § 404.1513(d), are not entitled to the same deference as acceptable medical sources and their opinions may be discounted if the ALJ "gives reasons germane" for doing so.

[2] While the ALJ did not explicitly find that Plaintiff suffers from high blood pressure, she did determine that Plaintiff suffers from the severe impairment of morbid obesity, and high blood pressure is one of the symptoms of morbid obesity. http://www.mayoclinic.com/health/obesity/DS00314/DSECTION=complications.

opinion."). Accordingly, it was appropriate for the ALJ reject Ms. Darnell's opinion on Plaintiff's ability to work because "such disability statements are reserved to the Commissioner." (AR at 17).

### 2. The Opinion of Treating Psychiatrist Dr. Patel

Plaintiff contends that the ALJ failed to give weight to an assessment from treating psychiatrist Bipin Patel, M.D., without providing adequate reasons for doing so. (Joint Stip. at 6-8). The treating records from Dr. Patel are dated between January and May of 2009.(AR at 318-23). In an initial assessment dated January 31, 2009, Dr. Patel noted that Plaintiff's depression and anxiety interfere with interpersonal, social and occupational functioning. (AR at 323). He also noted that Plaintiff had a current Global Assessment of Functioning ("GAF") score of 38, but that it had been as high as 68 in the past year. (AR at 321). In Dr. Patel's follow-up progress notes, he noted that Plaintiff was taking her prescribed medication but still felt depressed. (AR at 318-320).

Contrary to Plaintiff's contention that the "ALJ completely ignored without any comment whatsoever this important assessment from the treating psychiatrist," the ALJ did reference Dr. Patel's report in her decision. (AR at 16). While the decision does not mention Dr. Patel by name, it specifically refers to his report and its findings that Plaintiff suffers from depression and anxiety disorder and was being treated with medication. (AR at 16). The ALJ's RFC determination appears entirely consistent with Dr. Patel's opinion, as it took into account the diagnosis of major

depressive disorder. (AR at 12-13).[3]

Plaintiff argues in particular that it was error for the ALJ to fail to acknowledge the low GAF scores assessed by Dr. Patel. The GAF Scale provides a measure for an individual's overall level of psychological, social, and occupational functioning. Am. Psychiatric Ass' n, Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 2000) ("DSM IV"). However, a GAF score is not determinative of mental disability or limitation for Social Security purposes. 65 Fed.Reg. 50746, 50764–50765 (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the severity requirements in our mental disorders listings.") Neither the Social Security regulations nor case law require an ALJ to consider a claimant's GAF score. *Orellana v. Astrue*, 2008 WL 398834, at *9 (E.D. Cal. Feb. 12, 2008) ("While a GAF score may help the ALJ assess Claimant's ability to work, it is not essential and the ALJ's failure to rely on the GAF does not constitute an improper application of the law."); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Thus, the ALJ did not err in failing to mention the GAF scores given by Dr. Patel. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the ALJ need only explain why "significant probative

---

[3] To the extent it may have been error for the ALJ to reject Dr. Patel's diagnosis of Anxiety Disorder without providing reasons for doing so, this error was harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (harmless error rule applies to review of administrative decisions regarding disability). The RFC includes the limitations that Plaintiff can perform only "simple and repetitive tasks," is "precluded from doing fast paced work[]," and can have only "non-intense contact with the public." Nothing in Dr. Patel's assessment suggests that Plaintiff's Anxiety Disorder would require additional functional limitations.

evidence has been rejected"). Furthermore, even Dr. Patel's assessment notes that Plaintiff's score was as high as 68 within the year, a score which denotes only "some mild symptoms" or "some difficulty in functioning," but "generally functioning pretty well." (AR at 321); DSM IV at 34.

Accordingly, the ALJ gave appropriate weight to the opinion of Dr. Patel.

### 3. The Opinion of State Examining Physician Dr. Smith

Plaintiff contends that it was improper for the ALJ to give significant weight to the opinion of consultative examiner Linda M. Smith, M.D. (Joint Stip. at 6-7). Dr. Smith examined Plaintiff on February 17, 2009. (AR at 295-301). She diagnosed Plaintiff with Depressive Disorder, but noted that Plaintiff had stated that her medication, Effexor, was improving everything. Dr. Smith also found that Plaintiff was able to interact appropriately, understand and remember commands, and that her "psychiatric prognosis is good." (AR at 300). Dr. Smith did not observe "any evidence that [Plaintiff] would not be able to work at this time." (*Id.*)

A consultative examiner's medical opinion on an applicant's RFC may itself constitute substantial evidence if it rests on independent examination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, Dr. Smith's opinion rested on an independent examination of Plaintiff, and therefore there was nothing inappropriate about the ALJ's reliance on Dr. Smith's opinion.

### B. The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly evaluate her credibility regarding her subjective complaints in determining her RFC. At the hearing, Plaintiff testified that she left her job in

December 2008 because she could no longer handle the pressure of the job or perform as expected. (AR at 28). She further testified that she experiences the following symptoms: trouble handling more than one task at a time, inability to handle any pressure whatsoever, memory and concentration problems, low energy, panic attacks that occur a couple of times per month, uncontrollable crying jags that occur a few times per week, daily nausea, irritable bowel syndrome causing accidents when she cannot reach the toilet in time, headaches which put her in bed for at least a day triggered by stress, suicidal thoughts, and numbness of the feet. (AR at 29-52).

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. *Lingenfelter*, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to symptoms are reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186

at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).[4]

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. *Robbins*, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1996) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996). The ALJ may also employ other ordinary techniques of credibility evaluation. *Id.* (citations omitted).

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR at 16). However, the ALJ rejected as not credible Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms" to the extent they are inconsistent with the ALJ's RFC determination. (AR at 16). As there was no evidence of malingering, the ALJ was required to

---

[4] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell*, 947 F.2d at 346 n.3.

provide clear and convincing reasons for rejecting this testimony.

The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony. The ALJ found that Petitioner's activities of daily living undermined her allegations of functional limitations. (AR at 15). Plaintiff's testimony at the hearing, as well as the function report she submitted dated January 6, 2009, revealed that she could perform the following activities: taking care of her son, driving, shopping for groceries and other items, taking care of personal hygiene, helping with housework, preparing her own food, and regularly talking on the phone with her sister. (AR at 30-36, 171-78). Although a claimant "does not need to be 'utterly incapacitated' in order to be disabled," *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), the ability to perform certain activities of daily life can support a finding that the claimant's reports of his or her impairment are not fully credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries ... may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

Plaintiff contends that the ALJ "mischaracterized" her statements regarding daily activities, since she also testified that she often has help with the activities and does not perform all of them regularly. (Joint Stip. at 12-13). However, when a Plaintiff's statements support different interpretations, a reviewing court should not second guess an ALJ's reasonable

11

interpretation of the testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("It is true that Rollins' testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it."). Here, while Plaintiff did testify that some of her activities are performed on a limited basis, the ALJ's assessment that Plaintiff is able to perform these activities was a reasonable interpretation of her testimony. Accordingly, the ALJ's finding that Plaintiff's activities of daily living undermined her credibility was supported by substantial evidence.

The ALJ also discussed the observations of a Social Security claims representative who completed a disability report on December 16, 2008, after conducting a lengthy face-to-face interview with Plaintiff. (AR at 15, 159-62). The claims representative found that while Plaintiff had trouble answering questions and began to cry a few times during the interview, she otherwise responded well to questions and exhibited no other physical or mental problems.[5] Though not mentioned by the ALJ, a second report completed by a different claims representative on April 28, 2009, also found that Plaintiff exhibited no physical or mental difficulties, aside from trouble with answering questions. (AR at 187-89). It is appropriate

---

[5] While the ALJ, citing to the claims representative's report, stated that "[t]he claims representative noted that the claimant was well groomed but breathing hard," the report contains no such notation. (AR at 15, 159-62).

12

for an ALJ to consider whether a claimant's subjective complaints are inconsistent with her conduct. *Thomas v. Barnhart*, 278 F.3d 948, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and conduct supported rejection of claimant's credibility). Here, it was appropriate for the ALJ to consider that despite Plaintiff's testimony that she suffers from debilitating physical and mental impairments, a claims representative observed that Plaintiff could understand questions, concentrate, and generally behave appropriately in an interview setting.

These findings constitute clear and convincing reasons for the ALJ's rejection of Plaintiff's subjective testimony. *Smolen,* 80 F.3d at 1284. It is the responsibility of the ALJ to determine credibility and resolve conflicts or ambiguities in the evidence, *Magallanes v. Brown*, 881 F.2d 747, 750 (9th Cir. 1989), and a reviewing court may not second-guess the ALJ's credibility determination when it is supported by substantial evidence in the record, as here. *See Fair,* 885 F.2d at 604. Accordingly, it was reasonable for the ALJ to rely on the reasons stated above in finding that Plaintiff's subjective testimony regarding the severity of her symptoms was not wholly credible.[6]

---

[6] The ALJ also noted that although Plaintiff alleged having neuropathy of the feet, there was no objective medical evidence to support these allegations. (AR at 15). To the extent the ALJ intended this to be an additional reason for rejecting Plaintiff's overall testimony regarding her complaints, this reason does not provide a legitimate basis for discrediting Plaintiff. Plaintiff testified that she had discussed the neuropathy problems with a doctor only a couple of days before the hearing, and that the doctor had said he would refer her to a podiatrist. (AR at 39). Given this timing, it is unsurprising that the record did not contain evidence in support of these allegations. Moreover,

13

**C. The ALJ Properly Considered the Lay Witness's Statements**

Plaintiff contends that the ALJ improperly discounted the statements of lay witness Juanita Medina, a friend of Plaintiff. (Joint Stip. at 17-19.) On January 9, 2008, Ms. Medina completed a Third Party Function Report, detailing her observations of Plaintiff's abilities and daily activities. (AR at 179-86.) The ALJ found that Ms. Medina was not fully credible for the following reasons: (1) the report merely "mirrors" Plaintiff's allegations; (2) Ms. Medina is not a medical professional and therefore "is not competent to make a diagnosis or argue the severity of the claimant's symptoms in her relationship to her ability to work;" (3) as Plaintiff's friend, she has the motivation "to be helpful to the claimant so she can receive benefits;" and (4) her statements were not made under oath. (AR at 15).

A lay witness can provide testimony about a claimant's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). However, if the ALJ gives germane

---

individuals with diabetes frequently suffer from neuropathy. *See http://diabetes.niddk.nih.gov/dm/pubs/neuropathies/*. Nevertheless, any error is harmless given that the ALJ provided other well-supported reasons for not fully crediting Plaintiff's statements regarding her subjective complaints. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (harmless error rule applies to review of administrative decisions regarding disability).

14

reasons for rejecting the testimony of a witness, including the claimant herself, "the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina,* 674 F.3d at 1114 (citing *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009)). Even an ALJ's failure to discuss lay witness testimony at all is harmless when it is "inconsequential to the ultimate nondisability determination." *Id.* at 1115 (citing *Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

As discussed in detail above, the ALJ properly rejected Plaintiff's testimony. Ms. Medina's report provides essentially the same information regarding Plaintiff's alleged symptoms and limitations as Plaintiff's testimony and does not describe any limitations beyond those Plaintiff herself described. (*See* AR at 179-86.) Accordingly, the ALJ properly rejected the lay witness report under the standards established in *Molina*. *See also Valentine*, 574 F.3d at 694 (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

Furthermore, to establish reversible error, Plaintiff must specifically show that Mr. Medina's testimony, if credited, would alter the ultimate nondisability determination. *Id.* at 1116. (citing *Robbins v. Barnhart*, 466 F.3d 880, 885 (9th Cir. 2005) (reaffirming that an ALJ's decision will be reversed when omitted lay testimony, if credited, leads to a different disability conclusion)). Plaintiff has not made any such showing.

In addition, unlike lay *testimony*, there is no controlling

precedent requiring an ALJ to explicitly address *written* statements, such as the Third Party Function Report in this case, which, as the ALJ noted, was not made under oath. Indeed, it is clear that an ALJ is not required to discuss all evidence in the record in detail. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Accordingly, Plaintiff's claim is without merit.

**IV. Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED** and the action is **DISMISSED** with prejudice.

Dated: May 18, 2012

_____
Marc L. Goldman
United States Magistrate Judge

16